## Lawall's Estate.

*Taxation—Collateral inheritance tax—Decedents' estates—Deeds—Evasion of taxes.*

Where a brother who has resided with his sister for many years without contributing to the household expenses or paying board, and who is indebted to her in the sum of several thousand dollars, executes to her four deeds during five years preceding his death, two within a month of his death, for real estate, in consideration of $1.00, natural love and affection, and other good and valuable considerations, and there is nothing in the deeds, or in the acts or words of the parties to indicate that the deeds were to have a testamentary effect, the commonwealth cannot assess the property included in the deeds for tax purposes, on the ground that the deeds were evasions of the collateral inheritance tax law.

Argued May 13, 1913. Appeal, No. 68, April T., 1913, by the Commonwealth of Pennsylvania, from decree of O. C. Butler Co., March T., 1912, No. 62, in sustaining exceptions to a collateral tax appraisement in Estate of John Lawall. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to collateral tax appraisement. Before GALBREATH, P. J.

The opinion of the Superior Court states the facts of the case.

*Error assigned* was decree sustaining the exceptions.

*H. H. Goucher*, for appellant.—The exceptions should have been dismissed: Reish v. Com., 106 Pa. 521; Seibert's App., 110 Pa. 329; DuBois' App., 121 Pa. 368.

*S. F. Bowser*, with him *A. L. Bowser*, for appellee.

OPINION BY ORLADY, J., October 13, 1913:

There is no disputed fact in this case. John Lawall, a bachelor, had made his home with his sister, Mrs. Catherine Miller, for many years. He never contributed to the household expenses and did not pay boarding. He had been in poor health for some time prior to his death, which occurred on April 20, 1911, and was nursed and cared for by Mrs. Miller without any specific charge for services. His brother and Mrs. Miller inherited with him certain real estate from their father, John Lawall, Sr., and all of this was managed by this decedent. Some of this real estate was improved and yielded an income, and some was unimproved property which required an outlay of money. He had received some money from Mrs. Miller, and recognized his indebtedness to her by making a note for $6,000, dated May 11, 1898, and another for $1,000, dated August 8, 1899, but for some unexplained reason these notes were not delivered to her and were retained by him in his private safe, which was used in common with his sister, though each had a separate and private compartment. Several deeds were executed by the parties as cotenants in disposing of the real estate inherited from their father and are not involved in this controversy.

He executed and delivered to Mrs. Miller four deeds dated as follows: April 25, 1906; December 29, 1910; April 7, 1911, and April 17, 1911, the last one being dated three days before his death. The consideration in each is stated to be "One dollar cash, natural love and affection and other good and valuable considerations" and it is conceded that at the time of delivery of any

of the four deeds there was not any money or other consideration actually passed between the parties. It clearly appears that it was the intention of the decedent to convey the title to these parcels of real estate in part at least for a pre-existing indebtedness as well as for the natural love and affection he had for his only sister.

The deeds were delivered by him to Mrs. Miller on the days they were dated, without any declaration or limitation in any way affecting the general recitations conveying a fee simple title. They were placed in her own compartment of the family safe with her other papers, but were not placed on record until May 4, 1911, some fourteen days after his death.

The register had all the properties described in these four deeds and other property, valued and appraised for ascertainment of the collateral inheritance tax, the result being an appraisement aggregating $27,150.64, from which Mrs. Miller appealed to the orphans' court. At a hearing had on this appeal, Mrs. Miller was called as a witness. The important part of her testimony in regard to the purpose and intent of the grantor therein in executing the deeds, is as follows—when he delivered the first deed: " Q. What did he say to you when he delivered it to you? A. Well, he said to me, he was going away, and I didn't want him to go; he said he had all things cleaned up for me, had written all down what he wanted me to do, and said, ' This is yours; I give this to you if anything happens to me.' One time I said we ought to have our deeds recorded, I spoke to him of it and his lawyer spoke of it, when he said—'We will wait; we may have more to record and take them all together.' We meant to have them recorded but just put it off. I put the deeds with my own papers in the safe. When he handed me the different deeds he said, 'Here is this deed, I want you to have this property.' " At one place the question was put to the witness: "Q. This was instead of making a will, in lieu of a will,

in place of a will this was done, he made you the deeds?" and she answered, "Yes." But on further examination the following occurred: "Q. What did he say? A. He told me, 'I am making these deeds in your favor. I want you to have all that I have.' Q. Was a will mentioned in that connection? A. No, there never was a will mentioned. Q. Did he ever mention to you that he intended to make a will or had made one? A. No, sir, he never did. Q. This was his own choice? A. Yes, sir. Q. There was no understanding or anything? A. No, sir, there was no understanding." After the delivery of the deeds the domestic relations of the parties continued as before. The grantor received all the rents and managed the property as he had personally done, and the grantee did not take actual possession of the real estate conveyed until after his death.

The orphans' court stated: "To hold that the execution and delivery of the deeds which were so made and delivered before the grantor's death were made for the purpose of avoiding the collateral tax, would be to rest our conclusion on suspicion alone, and not upon any fact or facts appearing in evidence; on the contrary, it seems to have been the culmination of a purpose which the decedent had in his mind for several years, that all of his real estate should vest in his sister, which purpose was being gradually carried into effect from the time the first deed was made and delivered on April 25, 1906, five years before his death," and sustained the exceptions to the valuation and appraisement and her appeal. From this decree the commonwealth brings this appeal.

All of these deeds are in the usual form used in this state, and contain no reservation, condition or limitation, or any suggestion of a testamentary intention, but on the contrary, they are regular in every detail to convey a fee simple title. Whatever doubt there may be as to the competency of Mrs. Miller as a witness in her

own interest, it is not raised on the record before us, and her testimony strongly confirms the presumption of law in favor of their validity, and without it there is not an item of evidence which challenges their integrity. The only suggestion of the commonwealth is, that it was a plan or design on the part of John Lawall to evade liability to the collateral inheritance tax on the estate he passed to his sister, but in support of this there is not a particle of evidence.

There is substantive proof of an adequate consideration in addition to that of natural love and affection, which of itself is sufficient, in the admitted indebtedness of at least $7,000, and his boarding, care and attention to himself by the grantee for many years, as well as the unsettled family settlement between them.

This case is entirely free from the objectionable features which determined the decisions in the cases relied on by appellant, and no evidence was offered by the commonwealth to suggest any unlawful design that the deeds were intended as a substitute for a will. Had they been recorded promptly even that suspicion would have been avoided, and withholding them from the record did not imply that they "Were made or intended to take effect in possession or enjoyment after the death of the grantor," which is the statutory prohibition. The manner of living of this brother and sister is a sufficient explanation of their being held to be recorded "with others all at the same time," and there is nothing to indicate that the grantee did not have absolute control over these deeds, and could have placed them on record at any time, even as against the desire or will of the grantor.

The decree is affirmed.